IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CARLOS DEMETRIUS JUZANG, 234857,  *
                                   *
        Plaintiff,                 *
                                   *
vs.                                *  CIVIL ACTION 21-00216-KD-B
                                   *
LT. SMITH, *et al.*,               *
                                   *
        Defendants.                *

## REPORT AND RECOMMENDATION

Plaintiff Carlos Demetrius Juzang, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a Complaint under 42 U.S.C. § 1983. His action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). After careful consideration, it is recommended that this action be dismissed without prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

### I. Proceedings.

### A. Complaint. (Doc. 4).

The operative complaint in this action is Juzang's first amended complaint (Doc. 4) (complaint), which he was ordered to file because his original § 1983 complaint was not on the complaint form required by this Court. (See Docs. 1, 3). In the complaint, Juzang names Lieutenants Fountain and Smith and Captain Willie

Knight names as Defendants.  (Doc. 4 at 6, PageID.21-22).

According to Juzang, sometime during the last week of May or the first week of June of 2019 at Fountain Correctional Facility (Fountain), several inmates attacked him with knives and locks attached to belts and he was severely injured as a result.  (Id. at 4, PageID.19).  Juzang asserts that the on-duty officer in 3 Cell did not attempt to "secure or control the situation."  (Id.).  Juzang also asserts that as a result of the attack, he received nine stab wounds and skull fractures, which were treated at two free-world hospitals, and he now suffers from memory loss and major headaches.  (Id.).

Juzang alleges that when he returned from the hospital to Fountain, he was placed in 4 Cell, and then, without any explanation, Defendant Fountain took him to lock-up.  (Id.).  There, Juzang learned that Defendant Smith was charging him with assault with a weapon on an inmate.  (Id. at 5, PageID.20).  Juzang avers that he was the only one injured in the assault, taken to the hospital, placed in lock-up, and written up.  (Id.).  Juzang argues that the situation "smells fishy" to him, and notes that Defendant Knight informed I & I of the assault with a weapon.  (Id.).

Juzang asserts that an inmate by the name of Cookie, who was a friend of one of Juzang's assailants, admitted in lock-up that

the "lieutenants" (assuming the lieutenants to include Defendants Lieutenants Smith and Fountain) and Defendant Knight were "paid $1,000 to change the disciplinary and place all [the] blame on [Juzang]," which resulted in his custody being increased and him being transferred. (Id.). Juzang contends that this fraud by the officers "explains why the person whom he assaulted cannot be produced!" (Id.).

Juzang asserts claims against Defendant for "negligence, fraud and accepting bribes."[1] (Id. at 6-7, PageID.21-22). He requests the following relief: 1)expungement of the disciplinary, 2) a decrease in custody, 3) $500,000 in punitive damages and 4)$500,000 in compensatory damages. (Id. at 8, PageID.23).

## B. Screening.

During the Court's initial screening of Juzang's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), it was determined that more information was needed in order to fully screen the complaint. (Doc. 12, PageID.47). Therefore, Juzang was ordered to file a copy of the disciplinary report referenced in his complaint. (Doc. 12 at 1, PageID.47-48). Juzang did not respond to the Court's

---

[1] Negligence is not a basis for liability in a § 1983 action. Daniels v. Williams, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) (the "negligent act of an official causing unintended loss of or injury to life, liberty, or property" is simply not implicated under the Constitution).

order.

Instead of recommending the dismissal of this action for failure to comply with the Court's order, the Court, in an order dated February 8, 2022 (Doc. 15 at 1, PageID.51-52) afforded Juzang a final opportunity to file a copy of the disciplinary report. (Id.). Juzang responded that his copy of the disciplinary report was lost during a shakedown at the facility, and that he has twice requested a copy of the disciplinary report, but prison officials has not provided it to him. (Doc. 16 at 1, PageID.53). He also asserted that his medical records would show that he was injured from an assault. (Id.).

Due to the absence of a disciplinary report, the Court ordered Juzang to inform the Court, under penalty of perjury, of the penalties that he received as a result of the disciplinary, such as, whether he was placed in disciplinary segregation, and if so, for how long; whether he lost privileges, and if so, what type and for how long; and whether he suffered any other consequences as a result of the disciplinary. (Doc. 17 at 2, PageID.56).

Juzang responded, with an unsigned filing, wherein he asserted that he had requested the disciplinary report again but has not received it. (Doc. 18 at 1, PageID.57). He also attached a copy of his timesheet, which shows that his custody changed from a four to five. (Id.). He further states his parole was put off

for five years due to the assault being placed on his record. (Id.). Juzang also asserted that even though he was the inmate who was assaulted, he was sent to William E. Donaldson Facility (Donaldson), a level 5 max prison, to be around life-without-parole-inmates while the inmates who attacked him did not get in trouble. (Id. at 1-2, PageID.57-58). According to Juzang, upon his transfer to Donaldson, he "was placed in close custody, segregation for six months, no visits, phone calls twice a week [and] [he] was on restriction." (Id. at 1, PageID.57).

The timesheet filed by Juzang reflects that it was generated on December 9, 2020. The timesheet reflects, towards the bottom of the page, that Juzang received a major disciplinary at Fountain on June 14, 2019 for a violation of Rule 907 – assault with a weapon on an inmate. (Id. at 3, PageID.59). It also reflects that no time was lost, and that custody from 29 to 29 occurred. (Id.). At the beginning of the timesheet, it reflects that Juzang was at Donaldson, security 5, custody–CLS-9–as of August 14, 2020, and that he was prohibited from earning good-time.[2]

---

[2] Interestingly, the timesheet had a subsequent disciplinary struck through with a black mark. The black mark is not opaque so it can be seen that a disciplinary occurred at Donaldson on June 12, 2020, for a violation of "Rule 907 [for] an assault with a weapon on (unreadable)." (Doc. 18 at 3, PageID.59). However, Alabama Department of Corrections' regulations reflect that a Rule 907 violation is for an assault with a weapon on an inmate. See Doc. 17 at 3, PageID.59; http://www.doc.state.al.us/docs/AdminRegs/ar403.pdf, p.17 (Aug. 20, 2020) (last visited Oct. 28, 2022).

Because Juzang's response was unsigned, he was once again directed to sign his response under penalty of perjury and to file it no later than June 10, 2022. (Doc. 19 at 1, PageID.61). The Court kept a copy of his filing and returned the original filing to him. (Id. at 2, PageID.62). Juzang was warned that his failure to refile his response, signed under of penalty of perjury, would result in a recommendation of dismissal of his action for failure to prosecute and to obey the Court's order. (Id. at 2, PageID.62). Juzang has failed to respond to the Court's order. This is the second instance in which he has filed to timely comply with the Court's orders.

## II. Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because Juzang is proceeding *in forma pauperis*, the Court is reviewing his Complaint (Doc. 4) under 28 U.S.C. § 1915(e)(2)(B). Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, id. at 327, 109 S.Ct. at 1833, or the claim seeks to enforce a right that clearly does not exist. Id.

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief

may be granted. <u>Mitchell v. Farcass</u>, 112 F.3d 1483, 1490 (11th Cir. 1997). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" <u>Twombly</u>, 550 U.S. at 555, 557, 127 S.Ct. at 1965, 1966 (second brackets in original). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>

When considering a *pro se* litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney, <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998), but "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." <u>Campbell v. Air Jamaica Ltd.</u>, 760 F.3d 1165, 1168-69

(11th Cir.) (citation and quotation marks omitted), <u>cert. denied</u>, 574 U.S. 1047 (2014). Furthermore, a court treats as true factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements. <u>Iqbal</u>, 566 U.S. at 681, 129 S.Ct. at 1951. In addition, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." <u>Moon v. Newsome</u>, 863 F.2d 835, 837 (11th Cir.), <u>cert. denied</u>, 493 U.S. 863 (1989).

### III. Discussion.

### A. Claim for Failure to Charge Other Parties.

Juzang claims that his disciplinary for assault with a weapon on an inmate was the result of a $1,000 bribe being paid to Defendants to change the disciplinary and place all the blame on him, while the inmates who attacked him were not charged. (Doc. 4 at 5, PageID.20). Interestingly, Juzang does not allege that he is innocent of the disciplinary charge. Instead, his allegations give the impression that he believes that other inmates who were involved in the incident should have also received disciplinary charges.

Juzang brings his claims in a § 1983 action. To state a claim under § 1983, Juzang he must show that he has been deprived of a constitutional or federal right by a person acting under color of state law. <u>Harvey v. Harvey</u>, 949 F.2d 1127, 1130 (11th Cir. 1992).

8

"[P]roof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation" is required for stating a § 1983 claim. Troupe v. Sarasota Cty., Fla., 419 F.3d 1160, 1165 (11th Cir. 2005) (citing Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)), cert. denied, 547 U.S. 1112 (2006).

A claim that other inmates should share the blame by having disciplinary charges brought against them is not the typical claim arising from disciplinary proceedings. These allegations may be an attempt to bring a claim for a violation of the Equal Protection Clause, which "requires that all people similarly situated be treated alike." Hall v. Zickefoose, 448 F. App'x 184, 187 (3d Cir. 2011) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). An equal protection claim requires a plaintiff to "demonstrate that (1) he is similarly situated to [another] who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." Sweet v. Sec'y, Dep't of Corrs., 467 F.3d 1311, 1319 (11th Cir. 2006). Here, Juzang has not alleged that the other unidentified inmates were similarly situated to him, nor has he identified one of the required reasons for the discrimination.

Furthermore, "officials' decision not to bring charges against [the other inmates] has no bearing on the question whether [the plaintiff] himself was accorded due process, especially given the long-established wide discretion granted prison officials." McDuffie v. Estelle, 935 F.2d 682, 689-90 (11th Cir. 1991) (emphasis in original) (citing Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447, 473 (1979); cf. United States v. Ballard, 779 F.2d 287, 295 (5th Cir.), cert. denied, 475 U.S. 1109 (1986) ("A decision to prosecute is within the United States Attorney's substantial discretion [.]"); Otero v. U. S. Att'y Gen., 832 F.2d 141, 141 (11th Cir. 1987) ("[A] private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another."). Thus, Juzang's claim that Defendant Capt. Knight and the unidentified lieutenants were paid $1,000 to change the disciplinary to place all the blame on him does not demonstrate a violation of the Constitution.[3] (Doc. 4 at 5, PageID.20). Accordingly, the undersigned finds that Juzang has not stated a claim for the alleged failure to file disciplinary

---

[3] The other allegation that Juzang directs at Defendant Knight is that he informed I&I that Juzang had assaulted someone. (Doc. 4 at 5, PageID.20). There is no factual development concerning this allegation. Nonetheless, it does not present a plausible violation of the Constitution even if other facts were present. This is the extent of the allegations against Defendants Knight and Defendant Fountain assuming that he is one of the generic "lieutenants" in Juzang's general description of his claims. (Doc. 4 at 5, PageID.20).

charges against the other inmates in the assault, and the claim is thus due to be dismissed for this reason.

**B. Claim Based on Juzang's Disciplinary Conviction.**

Because Juzang is *pro se*, his allegations are liberally construed. That is, because it has been found that the claim advanced by his allegations does not state a § 1983 claim, the Court will examine his allegations to determine if they support any other type of claim based on the disciplinary. The lack of facts, however, would cause the Court, for the most part, to engage in speculation, which it will not do. Still, one of the claims generally brought by an inmate attacking a disciplinary is that he is not guilty of the disciplinary offense for which he was charged. Such a claim has minimal support here because Juzang does not assert that he was innocent of the disciplinary charge. He merely states that Defendant Lt. Smith[4] charged him with assault with a weapon on an inmate and that he was attacked by several inmates. (Doc. 4 at 5, PageID.20). Can this assertion be read as a claim that he was falsely or wrongly accused? Assuming arguendo that it is open to such an interpretation, Juzang nonetheless has not stated a cognizable claim because he does have not have a constitutionally protected right not to be "falsely or wrongly

---

[4] In Juzang's general description of his claims, this is the sole reference to Lt. Smith. (Doc. 4 at 5, PageID.20).

accused" of a disciplinary infraction that may result in a deprivation of a liberty interest. <u>Freeman v. Rideout</u>, 808 F.2d 949, 951 (2d Cir.), <u>cert. denied</u>, 485 U.S. 982 (1988); <u>see Watson v. Turner</u>, 2020 WL 4643478, at *7 (N.D. Ala. 2020) (unpublished); <u>Pierce v. Carson</u>, 2014 WL 5643336, at *9 (M.D. Ala. 2014) (unpublished). Rather, the right that a prisoner possesses is not to be denied a liberty interest without due process. <u>Freeman</u>, 808 F.2d at 951; <u>Bass v. Perrin</u>, 170 F.3d 1312, 1318 (11th Cir. 1999).

In the context of a prison disciplinary proceeding, to show a violation of the Constitution, the right involved is the right to due process when a prisoner is deprived of a liberty interest. U.S. CONST. amend. XIV (The Due Process Clause of Fourteenth Amendment protects against deprivations of "life, liberty, or property, without due process of law."). "A liberty interest may arise from the Constitution itself. . . or it may arise from an expectation or interest created by state laws or policies. . . ." <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005).

The Supreme Court in <u>Sandin v. Conner</u>, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), held that the Due Process Clause of the Constitution does not inherently have a liberty interest entitling an inmate to due process protections established by <u>Wolff v. McDonnell</u>, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

Id. at 487, 115 S.Ct. at 2302.  But the Court recognized that States may create liberty interests protected by the Due Process Clause.  Id. at 484, 115 S.Ct. at 2300.  It ruled that

> These interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, e.g., Vitek, 445 U.S., at 493, 100 S.Ct., at 1263-1264 (transfer to mental hospital), and Washington, 494 U.S., at 221-222, 110 S.Ct., at 1036-1037 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id.

The Eleventh Circuit explained Sandin's holding, stating:

> [T]he Supreme Court has made clear that there are two circumstances in which a prisoner can be further deprived of his liberty such that due process is required.  The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. . . .  The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484, 115 S.Ct. at 2300; see, e.g., Wolff v. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory "good-time credits" without due process)[.]. . .

13

Bass, 170 F.3d at 1318.

In Sandin, the Court found that the plaintiff's disciplinary sentence of thirty days in disciplinary segregation was not a dramatic departure from his sentence and was not an "atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. at 476, 485-85, 115 S.Ct. at 2296, 2301. That is, the Court held that the plaintiff's disciplinary sentence was not a dramatic departure from his sentence and did not work a major disruption in his environment. Id. at 485-86, 115 S.Ct. at 2301. The conditions in disciplinary segregation were found by the Court to mirror the conditions in administrative segregation and protective custody but for minor exceptions. Id. at 486, 115 S.Ct. at 2301. And the inmates in general population were observed by the Court as having significant amounts of lockdown time as well. Id. Furthermore, the Court found that the fact that his misconduct would be on his record when he was considered for parole was too attenuated to invoke the Due Process Clause's procedural guarantees. Id. at 487, 115 S.Ct. at 2302. Thus, the Court held that the plaintiff did not have a protected liberty interest entitling him to due-process protections, as the range of his disciplinary segregation confinement was within the range normally expected for a prisoner serving a criminal sentence of thirty years to life. Id.; see Smith v. Deemer, 641 F. App'x. 865, 868 (11th

14

Cir. 2016) (an atypical and significant hardship must exist for a significant length of time to find a liberty interest). Compare Al-Amin v. Donald, 165 F. App'x 733, 739 (11th Cir. 2006) (finding thirty months' confinement to administrative segregation did not constitute an atypical and significant hardship that would give rise to a liberty interest); Lekas v. Briley, 405 F.3d 602, 611 (7th Cir. 2005) (finding the ninety-day confinement to disciplinary segregation was not an atypical and significant hardship); Morefield v. Smith, 404 F. App'x 443, 446 (11th Cir. 2010) (unpublished) (finding a four-year confinement in administrative segregation, although lengthy, did not create a liberty interest considering that the conditions of confinement were similar to those in the general population), with Williams v. Fountain, 77 F.3d 372, 374 n.3 (11th Cir.) (one year in solitary confinement resulted in a deprivation of a liberty interest), cert. denied, 519 U.S. 952 (1996); Magluta v. Samples, 375 F.3d 1269, 1282 (11th Cir. 2004) (holding five hundred days in solitary confinement under harsh conditions was an atypical and significant hardship to which due process attached).

The allegations in Juzang's complaint contain little information about the disciplinary proceeding and its result. And, Juzang was not able to produce a copy of the disciplinary report. Moreover, his unsigned filing with the timesheet attachment

contains very little direct information about his disciplinary sentence at issue. (Doc. 18, PageID.57). As best the undersigned can discern form the limited information provided, it appears to be related to a subsequent classification decision. (Id.).

The timesheet shows that Juzang cannot earn good-time credits, which means that he did not lose any good-time credits because of the disciplinary. (Doc. 18 at 3, PageID.59). Thus, he did not have a liberty interest based on good-time credits. See Wolff v. McDonnell, 418 U.S. 539, 572-73, 94 S.Ct. 2963, 2982, 41 L.Ed.2d 935 (1974) (the deprivation of good-time credits requires due process). Nor does he have a claim for a liberty interest arising from his conditions of confinement due to the absence of specific allegations of his conditions and then contrasted with other conditions.

In his unsigned filing, Juzang alleges his custody was upgraded, and that he was transferred to another institution due to the disciplinary. (Doc. 4 at 5, PageID.20). These consequences, however, are not listed as sanctions for being found guilty of any rule violation. See www.doc.state.al.us (9/25/2017)(the Male Inmate Handbook lists the various levels of rule violations and the possible sanctions including loss of earned good time, recommending custody review, loss of privileges for 60 days, and confinement to disciplinary segregation up to 45 days)

16

(last visited Oct. 28, 2022). Rather, the consequences alleged by Juzang appear to be the result of a classification decision. See Anthony v. Warden, 823 F. App'x 703, 706-09 (11th Cir. 2020) (finding no violation of the Constitution when, after inmate served his disciplinary sentence, he was reclassified to preventative status and transferred to Limestone where he was placed in administrative segregation for six months, which was based on his heightened custody status).

For example, in Clark v. Jones, 2021 WL 925879, at *6 (M.D. Ala.), adopted, 2021 WL 922169 (M.D. Ala. 2021) (unpublished), the plaintiff was charge with, and found guilty of, a violation of Regulation 907-assault with a weapon on an inmate. Id. at *6. His disciplinary punishment was forty-five days in disciplinary segregation, forty-five days of loss of phone and canteen privileges, and a recommendation for custody review. Id. Following a separate classification hearing, his custody was increased from medium level four to medium level five, and he was transferred to a security level five institution to free up restrictive housing cells at Ventress. Id. The court found that his reclassification was reasonable and appropriate considering his assault on another inmate. Id. at *9.

In his complaint, Juzang alleged his custody was upgraded and he was transferred to another institution, which standing alone

are not liberty interests. That is, an inmate "has no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison[,]" such that the transfer of a state prisoner to a less agreeable prison does not trigger a due process violation and a prisoner's classification is controlled by officials who have full discretion. Kramer v. Donald, 286 F. App'x 674, 676 (11th Cir. 2008) (citing Meachum v. Fano, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976) (no constitutional violation to transfer an inmate "from one institution to another within the state prison system"); Moody v. Daggett, 429 U.S. 78, 88 n.9, 97 S.Ct. 274, 279 n.9, 50 L.Ed.2d 236 (1976) (no right to a certain custody classification)). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976).

Here, Juzang, in his unsigned response, states that his custody was changed from a four to a five, that he was placed in close custody segregation for six months, with no visits, and only two phone calls a week, that he was placed on restriction, and

that his parole was put off for five years. (Doc. 18 at 1, PageID.57). While Juzang asserts that these changes occurred, he does not indicate if the changes were the result of his disciplinary conviction or a classification decision.[5] (Id.). Again, these consequences appear to be a result of a classification decision, see infra, and a decision by the Alabama Board of Pardons and Paroles.

Nonetheless, an inmate has no protected liberty interest in his classification. Moody, 429 U.S. at 88 n.9, 97 S.Ct. at 279 n.9. The Constitution does not grant an inmate a right to visitation, canteen, and telephone privileges. Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (finding an inmate does not have a protected interest in visitation arising from the Due Process Clause); see Overton v. Bazzetta, 539 U.S. 126, 131, 134, 123 S.Ct. 2162, 2167, 2168, 156 L.Ed.2d 162 (2003) (upholding a two-year restriction on visitation privileges for two substance abuse violations because prison confinement requires the surrendering of liberties and privileges enjoyed by other citizens, with free association being least compatible right to prison confinement); Charriez v. Sec'y, Fla. Dep't of Corrs., 596 F. App'x 890, 894 (11th Cir. 2015) (finding

_____

5 In his unsigned response, Juzang also states that he requested a copy of the disciplinary and will forward it upon receipt. (Id.).

19

that the one-year loss of visitation privileges did not implicate a state-created liberty interest as no right to unfettered visitation exists); Moore v. Pemberton, 110 F.3d 22, 23 (7th Cir. 1997) (finding no loss of liberty or property when prisoner received as part of his disciplinary punishment a two-week loss of commissary privileges); Walker v. Loman, 2006 WL 3327663, at *1, *3 (M.D. Ala. 2006) (unpublished) (holding the ninety-day loss of store, telephone, and visitation privileges, recommended custody increase, and referral for possible free-world prosecution did not result in the deprivation of a liberty interest). In addition, Alabama state courts have determined a prisoner does not have a state-created liberty interest in store, telephone and visitation privileges, Dumas v. State, 675 So.2d 87, 88 (Ala. Crim. App. 1995), or in being required to perform extra work. Summerford v. State, 466 So.2d 182, 185 (Ala. Crim. App. 1985). An inmate's ability to visit, to shop, and to use the telephone is heavily restricted while in prison.

While Juzang asserts that he was placed on "restriction", he does not explain "restriction." Thus, with only this reference, no liberty interest can be found. In addition, "the Alabama parole statutes do not create a liberty interest" in parole. Thomas v. Sellers, 691 F.2d 487, 489 (11th Cir. 1982); see Ellison v. Alabama Bd. of Pardons & Paroles, 2017 WL 6947946 (11th Cir. 2017)

(unpublished) (same); <u>Massey v. Ala. Bd. Pardons & Paroles</u>, 2019 WL 1388959, at *3 (M.D. Ala. 2019) (the statute contains no language for the initial parole consideration and the Board has total discretion in determining who should be granted parole). <u>Cf.</u> <u>Sandin</u>, 515 U.S. at 487, 115 S.Ct. at 2302 (a finding that the misconduct would affect his parole consideration was too attenuated to find a liberty interest).

Thus, the undersigned finds that Juzang has failed to state a claim based on his disciplinary for assault with a weapon on an inmate on June 14, 2019. (<u>see</u> Doc. 18 at 3, PageID.59, date).

## IV. Conclusion.

Based upon the foregoing reasons, it is recommended that this action be dismissed without prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. Gen.LR 72(c). The

parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **28th** day of **October, 2022.**


**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**